IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **HECTOR OVANDO LEON,** *et al.*, | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Case No.: CBD-16-0416** |
| | * | |
| **ANTONIO ALVAREZ,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |
| | * | |
| | * | |
| | ***** | |

## MEMORANDUM OPINION AND ORDER

The parties submit before this court their Joint Motion for Approval of Settlement (the "Motion") (ECF No. 31).  The Court has reviewed the Motion, the related memorandum, and has reviewed the applicable law.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md.).  For the reasons presented below, the Court GRANTS the Motion.

### I.    Factual Background

Plaintiff Hector Ovando Leon ("Plaintiff")[1] alleges he worked as a laborer for Antonio Alvarez d/b/a A and C Precise Construction and Christian Alvarez d/b/a A and C Precise Construction (collectively "Defendants").  On February 15, 2016, Plaintiff brought suit alleging that during the time of his alleged employment, Plaintiff was not compensated at a rate of one and one half times his regular hourly rate for all hours worked over forty hours, as required under the Fair Labor Standards Act ("FLSA").  29 U.S.C. § 201, *et seq.*  Plaintiff further alleges that Defendants failed to pay his normal hour wages for the final week of his

---

[1] The record reflects that Israel Boquin Canales, a named plaintiff in the original Complaint, filed a Stipulation of Dismissal without seeking court approval.  ECF No. 29.

employment.  Plaintiff raises these claims for unpaid wages pursuant to the FLSA, the

Maryland Wage Payment and Collection Law ("MWPCL"), and the Maryland Wage & Hour

Law ("MWHL").  Compl. 1.  In response, Defendants assert two affirmative defenses, denying

all liability.  Answer 2.

On July 28, 2017, the parties filed the Motion seeking approval of their agreement to

settle the case.  Under the agreement, Plaintiff agrees to settle, discharge, and terminate all

claims in exchange for a payment of $8,000.00, representing $4,000.00 in damages to Plaintiff

and $4,000.00 in attorney's fees and costs for Plaintiff's counsel.

## II.    Analysis

Under the FLSA, Congress sought to protect workers from the poor wages and long

hours that can result from significant inequalities in bargaining power between employers and

employees.  *See Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md.

June 13, 2013) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).  FLSA

provisions are mandatory and generally are not subject to bargaining, waiver, or modification

by contract or settlement.  *Id.*; *Brooklyn*, 324 U.S. at 706 (1945).  Court-approved settlement is

an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of

disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's

overreaching.'"  *Saman*, 2013 WL 2949047, at *2 (quoting *Lynn's Food Stores, Inc. v. United

States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).  The Fourth Circuit has not directly addressed

the factors to be considered when deciding motions for approval of FLSA settlements.  *See id*.

at *3 (citations omitted).  However, district courts in this circuit typically follow the Eleventh

Circuit's analysis in *Lynn's Food Stores*.  *Id*.  In approving FLSA settlements, the Court must

first be persuaded that the settlement "reflects 'a fair and reasonable resolution of a *bona fide*

dispute." *Id.* The Court must then evaluate the fairness and reasonableness of FLSA

settlements using the following factors:

> "(1) the extent of discovery that has taken place; (2) the stage of the
> proceedings, including the complexity, expense and likely duration of the
> litigation; (3) the absence of fraud or collusion in the settlement; (4) the
> experience of counsel who have represented the plaintiffs; (5) the opinions of []
> counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the
> amount of the settlement in relation to the potential recovery."

*Id.* (citation and quotations omitted). The Court also separately evaluates the reasonableness of

attorney's fees and costs. *Id.* ("Where a proposed settlement of FLSA claims includes a

provision regarding attorneys' fees, the reasonableness of the award must also be independently

assessed, regardless of whether there is any suggestion that a conflict of interest taints the

amount the wronged employee recovers under a settlement agreement." (Citations and

quotations omitted)).

## A. *Bona Fide* Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the

FLSA, courts examine the pleadings in the case, along with the representations and recitals in

the proposed settlement agreement. *See Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310,

2009 WL 3094955, at *16–17 (E.D. Va. Sept. 28, 2009). After reviewing the pleadings, the

Court finds that a *bona fide* dispute exists in this case.

Under the FLSA, "no employer shall employ any of his employees . . . for a workweek

longer than forty hours unless such employee receives compensation for his employment in

excess of the hours above specified at a rate not less than one-and-one-half times the regular

rate at which he is employed." 29 U.S.C. § 207(a)(2)(C) (2010). If an employer violates

Section 207, he is liable for unpaid overtime, and an equal amount of liquidated damages. 29

U.S.C. § 216(b) (2008). However, only "employees" qualify for such protections, with

independent contractors exempt from the overtime pay requirements. 29 U.S.C. § 203(e)(1); (e)(4) (2008).

Here, Plaintiff asserts that he worked more than forty (40) hours per week, that he was never compensated at the required overtime rate, and that Defendants failed to pay him for his final week of work.  Compl. 4.  Plaintiff claims that at all times during the employment in question, Plaintiff was an employee of Defendants, as defined in Section 203(e) of the FLSA. *Id.* at 3.  In response, Defendants deny all liability and have raised various defenses to Plaintiff's claims.  Answer 2.  Defendants raise multiple affirmative defenses, including that: (1) Plaintiff was at all times employed as a "1099 worker," referencing tax form 1099 used by independent contractors, (2) they are exempt from paying increased overtime wages under 29 U.S.C. 203(e)(1) because Plaintiff was an independent contractor, and (3) all hours worked were paid accordingly.  Answer 2.  Thus, a *bona fide* dispute exists as to Defendants' liability.

**B.  Fairness and Reasonableness of the Settlement Agreement**

If a *bona fide* dispute exists, courts evaluate the fairness and reasonableness of the settlement using the following factors:

> "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery."

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

After applying the *Saman* factors to the facts of this case, the Court concludes that counsel has provided sufficient information to find that the proposed settlement is a fair and reasonable compromise of the parties' *bona fide* dispute.

### i. Extent of discovery

As to the first factor to be considered from *Saman*, the parties fail to adequately address this element directly.  In their evaluation of this factor, the parties give a one-sentence response: "this matter was settled as a result of an adversarial proceeding (this lawsuit) and settlement negotiations which transpired between the Parties' counsel[.]"  ECF No. 31-1, p. 7. However, elsewhere in the Motion, the parties explain that they engaged in "exchanging documentation and discussing the Plaintiffs' pay records and the Defendants' financial circumstances in great detail."  Finally, the parties make note of the fact that "the settlement reflects reasonable compromises regarding…the amount of the alleged damages . . . given the facts uncovered during informal discovery."  *Id.*  While the parties failed to disclose specific instances of discovery, the Court concludes that sufficient discovery took place to determine the relevant facts.

### ii. Stage of proceeding, complexity and expense of litigation

The Court is satisfied that the second factor from *Saman* is fulfilled through both duration and parties' assertions.  After extensive negotiations via pleadings, emails, and conferences, the parties seek to highlight that the settlement was reached only after exchanging documentation and the discussion of the records "in great detail," with due notice given to the "time-consuming and expensive" nature of continuing with litigation.  ECF No. 31-1, p. 4, 7.

### iii. Absence of fraud

There is no evidence that the agreement is the product of fraud or collusion.  "There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Saman*, 2013 WL 2949047, at *5 (quoting *Lomascolo* at *12 ).

####### *iv.    Experience of counsel*

The parties stipulate that "Plaintiff was represented by Counsel who adequately protected his rights." ECF No. 31-1, p.7.  Plaintiff's counsel also attached an affidavit to the Motion, which states that Plaintiff's counsel has been actively practicing law for over sixteen years and has "handled numerous employment cases through trial and appeal relating to wage and hour issues as well as discrimination matters." ECF No. 31-3, p.1.  While Defendants were *pro se* for most of this case, the record shows that Defendants' counsel has represented them for close to two months preceding the date of the filing of the Motion.  ECF No. 27.  The Court is satisfied that the fourth factor from *Saman* has been satisfied.

####### *v.    Opinions of counsel*

The Motion states that "the Parties agree that the settlement is fair, just, and adequate to settle Plaintiff's claims." ECF 31-1, p.7.  The parties further claim that the settlement "reflects reasonable compromises regarding bona fide disputes." *Id.*  The Court agrees.

####### *vi.    Plaintiff's potential of recovery at trial*

Plaintiff's initial claims were for $5,573.75, and the settlement calls for Plaintiff to receive $4,000.00 (not including attorney's fees).  ECF No. 31-1, p.5.  Assuming Plaintiff would prevail at trial, Plaintiff would also be entitled to the same amount in liquidated damages.  29 U.S.C. § 216(b) (employers who violate the FLSA are liable for unpaid wages and "an additional equal amount of liquidated damages").  Thus, at trial, Plaintiff had the potential to recover $11,147.50.  However, to obtain that amount, Plaintiff would have to be successful through trial, which would cost both additional time and money, all based on a proverbial "dice roll."  The settlement amount is a majority of the amount demanded, and given that Plaintiff's likelihood of winning at trial is not certain, the Court is persuaded that the amount provided is a fair settlement.

**C.  Attorney's Fees and Costs**

"Where a proposed settlement of FLSA claims includes a provision regarding attorneys'
fees, the reasonableness of the award must also 'be independently assessed, regardless of
whether there is any suggestion that a conflict of interest taints the amount the wronged
employee recovers under a settlement agreement.'"  *Saman*, 2013 WL 2949047, at *3 (quoting
*Lane v. Ko-Me, LLC*, No. 10-2261, 2011 WL 3880427, at *3 (D. Md. Aug. 31, 2011)).  The
burden of establishing the reasonableness of a requested rate rests with the plaintiff.  *Plyer v.
Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).

In awarding attorney's fees to Plaintiff, the Court applies the traditional lodestar factors.
*Saman*, 2013 WL 2949047, at *6 (citation omitted).  The lodestar amount is the reasonable
hourly rate multiplied by hours reasonably expended.  *Id.*; *see also Riveros v. WWK
Construction, Inc., et al.*, No. PJM-15-193, 2015 WL 5897749, at *4 (D. Md. Oct. 5, 2015).
"An hourly rate is reasonable if it is 'in line with those prevailing in the community for similar
services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Id.* (citation
omitted).  The federal court in Maryland uses Appendix B to the Local Rules as a reference to
the rates "that are presumptively reasonable for lodestar calculations."  *Id.*  "Plaintiffs should
also provide all documentation necessary for the Court to make a lodestar determination as to
the hours reasonably expended, including but not limited to declarations establishing the hours
expended by counsel, broken down for each task."  *Id.*  Thus, "in addition to the attorney's own
affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing
market rates in the relevant community for the type of work for which he seeks an award."
*Plyer*, 902 F.2d at 277 (citations and internal quotations omitted).

In assessing reasonableness, the Fourth Circuit has instructed district courts to also

consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions
> raised; (3) the skill required to properly perform the legal services rendered; (4)
> the attorney's opportunity costs in pressing the instant litigation; (5) the
> customary fee for like work; (6) the attorney's expectations at the outset of the
> litigation; (7) the time limitations imposed by the client or circumstances; (8) the
> amount in controversy and the results obtained; (9) the experience, reputation
> and ability of the attorney; (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and length of the professional
> relationship between attorney and client; and (12) attorneys' fees awards in
> similar cases.

*Saman*, 2013 WL 2949047, at *6-7 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28

(4th Cir. 1978).

Plaintiffs' counsel billed a total of $8,909.50 to Plaintiffs (one of whom was dismissed

in June, 2017), based on hourly rates between $160-$460, depending on the attorney or

paralegal working on the case, and $555.00 in court costs.  She provided a detailed breakdown

in her attached affidavit, as well as another attachment of her invoice to Plaintiffs with all

billable hours spent on the case. [2]  ECF No. 31-3 at Ex. 2; ECF No. 31-3 at Ex. 3.  In the

proposed settlement, Plaintiffs' counsel is reducing her fee to $4,000.00, including court costs.

However, Plaintiffs' counsel did not delve into the factors for determining the reasonableness

of the fee as outlined in *Saman*, thus failing to provide the Court with adequate support for the

hourly rates billed to Plaintiff.

The Court hesitates to completely embrace the hourly rates employed by each time

keeper.  Eduardo Garcia, an individual whom Plaintiff's counsel details as "an attorney with

two years of experience," has billed for services at an hourly rate between $295-$325.

---

[2] While Plaintiff's counsel was providing legal services to multiple clients in this case, the award of fees
is appropriate for only one client.  The Court is persuaded that the interests of Plaintiffs were sufficiently identical
so as to avoid requiring further reductions of the requested fees.

Appendix B to the Local Rules suggests that, as of July, 2016, an attorney admitted to the bar for less than five years should be billed at an hourly rate between $150-$225. Even assuming *arguendo* that Plaintiff's counsel had justifiable reasons for the higher hourly rates, no reasoning is provided to the Court to determine if the higher rate is "appropriately supported." Local Rules App. B, 127 (D. Md.) (July 1, 2016). Natalia Prado, of whom the record is silent, is presumably a paralegal or support staff member, and billed at an hourly rate between $160-$180. Meanwhile, Appendix B suggests an hourly rate for paralegals and law clerks between $95-$150. However, because the record is silent as to Ms. Prado's position with the firm, the Court is not able to support a finding that her billing rate should be included in the final billed amount. With Plaintiff's counsel's affidavit deficient on these accounts, the Court hesitates to fully endorse the billed amount as reasonable. However, when using the upper cap of the guidelines provided in Appendix B, Plaintiff's counsel still incurred reasonable attorney's fees of $7,312.50, a reduction of only $1,597.00.[3] In light of the *de minimis* nature of the adjusted billable amount, the Court finds that the various factors weighed support counsels' assertions that the fees are reasonable.

While the Court is concerned with the hourly rates billed by Eduardo Garcia and Natalia Prado, the total fee charged seems reasonable considering that it is less than half of the actual billed amount, and approximately 55% of the adjusted billed amount using the Local Rules as a guide.

---

[3] Calculation was made by multiplying counsel's billable hours by the upper cap of the guidelines in Appendix B of the Local Rules:

(Billable Hours) X (Hourly Rate) = Amount Charged

Eduardo Garcia   (14.5 hours)   X  ($225/hour)  =  $3,262.50  = $1,189 reduction from amount charged

**III.    Conclusion**

For the foregoing reasons, the Court **GRANTS** the Motion.


September 22, 2017                                          _____/s/_____
                                                           Charles B. Day
                                                           United States Magistrate Judge


CBD/gbc